### WALLIN et al. v. REAGAN et al.

(Circuit Court, W. D. North Carolina. July 28, 1909.)

1. EJECTMENT (§ 46*)—PARTIES—TENANT AT WILL.
   Where a tenant at will disclaimed all other interest in the property sued for in ejectment, he was not a necessary party.
   [Ed. Note.—For other cases, see Ejectment, Cent. Dig. § 138; Dec. Dig. § 46.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. REMOVAL OF CAUSES (§ 36*)—CITIZENSHIP—EJECTMENT—JOINDER OF TENANT.**
Joinder of a tenant at will of the same citizenship as plaintiff as a party in ejectment did not prevent the removal of the cause otherwise removable to the federal court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 79; Dec. Dig. § 36.*

Fraudulent joinder of parties to prevent removal, see note to Offner v. Chicago & E. R. Co., 78 C. C. A. 362.]

J. M. Gudges, Sr., for plaintiffs.
Merrimon & Merrimon, for defendants.

NEWMAN, District Judge. This is a motion to remand the case, which was removed to this court from the superior court of Madison county. It appears that the suit was brought by James Wallin et al. against Marion Reagan to recover a certain tract of land in Madison county. Judgment was given in favor of the plaintiff at the May term, 1904, of the Madison superior court; the exact date of the judgment not appearing. It then appears that on August 1, 1904, Marion Reagan filed an affidavit in which he set up the fact that, in the suit referred to, summons was issued, directed to the sheriff of Madison county, commanding him to summons Marion Reagan and Louisa Freidman, as defendants to be and appear at a certain term of the superior court to be held for the county of Madison. This summons was served upon Marion Reagan by a deputy sheriff and read to him, and Reagan asked if it was necessary for him (Reagan) to notify the owners of the land of the suit, and the sheriff told him that it was, and that they would have to be notified by the plaintiff. Reagan is the tenant of Louisa Freidman, and has been ever since she became the owner of the land, and when the name of Louisa Freidman was read as one of the defendants by the deputy sheriff, at the time the summons was served, he asked why the papers were served on him, as he had no interest in the land, and not on Mrs. Louisa Freidman, and that the deputy sheriff said all parties would have to be notified, but that Reagan would not have to do so. As Reagan was ignorant of such matters, he thought the sheriff was giving him proper information, and he did not notify his landlord of the suit, or her agent at Asheville, N. C., J. H. Lange, nor did he give the suit any attention, as he supposed the owners knew about the suit and would protect themselves and their interests.

Before this suit in question, and on January 8, 1900, James Wallin had instituted a suit against Marion Reagan and Louisa Freidman, and had the summons served on affiant, and the suit pended in the superior court of Madison county, when Wallin took a nonsuit at the August term, 1901. More than one year elapsed from the judgment of nonsuit before the suit in question was instituted. No complaint was filed in this action until September 12, 1903, as the records of this court show, and "at the May term, 1904, of the superior court, affiant went to Marshall, to attend court, and stayed there two days, and was informed that there would be no court, but is informed that the judge came to Marshall on Wednesday, opened

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and adjourned the term of court on that day, and left Marshall. Affiant had gone home the previous day, and never heard of this judgment until within the past week, when he was told about it by James Wallin. Affiant was informed that the judgment was not filed by the clerk of the superior court of Madison county, until within the past week or 10 days, and that said clerk never heard of said judgment until it was brought to him by the plaintiff with the request that it be placed on the records. That no minute of the same appears on the records of the court, as affiant is informed and believes, and said judgment has been docketed, if docketed at all, within the past few days." Affiant further swears that:

"Said Wallin knew that affiant was only a tenant of Mrs. Louisa Freidman, and that he had no interest in the land, and is informed and believes that said Wallin also knew that J. H. Lange was an agent of Mrs. Freidman, and that said Wallin has for several years been trying to get affiant to surrender the possession of the land to him, and has repeatedly offered to affiant small sums of money to surrender the possession. That no nonsuit was ever taken as to the other plaintiff in this action; but in the judgment, as filed, all the plaintiffs are stricken out, and only the name of James Wallin appears as a plaintiff. That affiant was misled by the officer who served the papers on him and did not notify his landlord and by the information that the judge would not hold a term of the superior court at Madison county."

Reagan then prays for an order to restrain James Wallin from any action under the judgment until affiant can have an opportunity, or his landlord, the owner of the property, can have an opportunity to have the judgment vacated and set aside, and a trial of the cause had on its merits.

J. H. Lange also made an affidavit to the effect: That, ever since Mrs. Louisa Freidman became the owner, he has been looking after the land described in the suit in question, and Marion Reagan has been in possession of the land as a tenant of Mrs. Louisa Freidman. That several years ago James Wallin brought a suit about the same lands, affiant was notified of the suit and at once employed attorneys to look after the litigation, and he was advised that the plaintiff had been thrown out of court. That affiant then asked the clerk of the court, out of the abundance of caution, to notify him if any further litigation should ever be commenced by Wallin, or any other person, about the said land, and that the clerk promised to give him such notice. That he never heard anything about the matter further until, about a week or 10 days ago, affiant received a letter from the clerk inclosing a judgment taken in the above cause, and saying to affiant that he did not know when it had been rendered, but that it had been brought into his office that morning with the request that it be docketed. Affiant is informed and believes that James Wallin knew that Mrs. Louisa Freidman was the owner thereof, and, as evidence of such fact, avers that, in each suit brought by James Wallin, Mrs. Louisa Freidman is named as a party defendant. He believes that Marion Reagan was misinformed as to his duty to notify affiant or Mrs. Freidman for the purpose of keeping them in ignorance of the suit, of throwing Reagan off his guard. That the property is of great value, to wit, several thousand dollars. That this suit is a pauper suit, the

plaintiff is utterly insolvent and, if he obtains possession of the property, could, and will, do great damage to the same in a very short time. That Mrs. Freidman or Marion Reagan has had possession of the land for several years, and James Wallin has been endeavoring in all kinds of ways to get possession of it. That it is the purpose of Mrs. Louisa Freidman to contest the claim of James Wallin, as she did in the first suit, but she has had no opportunity to do so, as she and affiant have been utterly ignorant of this litigation until the receipt of the letter by affiant from the clerk of the superior court. He then prays the court to make an order restraining James Wallin from taking any action under the judgment obtained in his action, till the further orders of the court.

Then appears an order, signed by Fred Moore, judge of the superior court, as follows:

"This cause coming on to be heard upon the application for a restraining order, and being heard: It is ordered and adjudged that the plaintiff, James Wallin, show cause before Judge Shaw, at Marshall, N. C., on August 16, 1904, why the injunction asked for in this cause should not be granted, and in the meantime the said James Wallin is hereby restrained and enjoined from taking or attempting to take possession of the lands and premises mentioned and described in the complaint in this under or by virtue of any writ issued pursuant to the judgment rendered in this cause.

"The clerk will issue this writ upon the defendant giving bond in the sum of $200.00, conditioned as provided by the statute.

"Asheville, N. C., August, 1, 1904.

"[Signed]                    Fred Moore, Judge of the Superior Court.

"The bond required by the foregoing order has been signed by J. H. Lange, and D. W. Newell and has been duly approved.

"[Signed]                                          Fred Moore, Judge."

Then appears an order made at the August term, 1904, by Thomas J. Shaw, as follows:

"In this cause it is agreed that Marion Reagan, the defendant above named, have leave to file answer to the complaint on file, and file such bond as may be required by law in action heard, and the restraining order heretofore issued may be continued to the hearing of such issue as may be made by the pleadings.

"This answer to be filed during the present term of Madison superior court, and, if no answer is filed during that term, the judgment herein agreed to be stricken out to stand as the judgment of the court.

"[Signed]                              Thos. J. Shaw, Judge Presiding."

Then appears the following agreement signed by counsel of the parties:

"Whereas, counsel have come here on this August 20, 1904, to file answer in this cause, but their client is not here to verify same: It is agreed that said answer may be filed and treated as verified for all purposes except a trial; counsel for defendant agreeing to have same verified before trial or to then withdraw same or let it be stricken out."

Then appears the following application of Joseph L. Freidman and John W. Keiler to be made parties defendant in the cause.

"Joseph L. Freidman and John W. Keiler come into court by and through their counsel, Messrs. Merrimon & Merrimon, and respectfully show to the court that they are the owners in fee simple of the land mentioned and described in the complaint, and that Marion Reagan is their tenant. They respectfully ask the court that they be permitted to make themselves parties

defendant to this cause, and to act in the same for the purpose of protecting their interest.

"[Signed]            Merrimon & Merrimon,

"Attys. for Freidman, Keiler & Co."

Then comes the following order of Judge Shaw made at the August term, 1904:

"It being made to appear to the court that Joseph L. Freidman and John W. Keiler claim to be the owners of the land in controversy in this action, and are proper and essential parties to this action for a trial and proper determination, and having moved the court for leave to become parties defendant: It is on motion of counsel for said Freidman and Keiler and Marion Reagan ordered and adjudged that Joseph L. Freidman and John W. Keiler be and they are hereby made parties defendant to this cause, and are given leave to take such action as they may be advised is proper to protect their interest.

"[Signed]            Thos. J. Shaw, Judge Presiding."

The answer of Marion Reagan was filed on August 20, 1904, under the agreement referred to, in which Reagan denies the allegations of the petitioner and says he is a tenant of Freidman, Keiler & Co., of Paducah, Ky., a firm composed of Joseph L. Freidman and John W. Keiler, and he is informed and believes that said firm are the owners and entitled to the possession of the lands and premises described in the complaint, and that he is holding the land for them. He disclaims any interest or title whatever in or to said land, and says he is only a tenant at will of the said Freidman, Keiler & Co. He is advised and believes that Joseph L. Freidman and John W. Keiler are necessary and proper parties for the final determination of this action, and prays that they be permitted to come in and make themselves parties defendant to the cause.

I have stated the foregoing from the record brought into this court, that it may throw light, as far as may be, on the question as to whether the controversy involved in this case was one in which Marion Reagan had any real interest. A petition is then filed by Friedman and Keiler to remove the case to the Circuit Court of the United States for the Western District of North Carolina; petitioners averring: That the suit is of a civil nature, and that the matter and amount in dispute exceed the sum of $2,000, exclusive of interest and cost, and that in it there is a controversy between citizens of different states; that is, a controversy between the petitioners, who were at the time of the bringing of the suit, and have been ever since, and still are, citizens of the state of Kentucky, and the defendants, who were at the time of the bringing of the suit, have been ever since, and still are, citizens of the state of North Carolina. That the controversy is of the following nature, an ordinary action of ejectment to recover the land to which the plaintiffs claim title and damages for the detention thereof, which land is worth at least the sum of $3,000. That Marion Reagan is a tenant of the petitioners, and in possession of said land as such tenant, and disclaims all right, title, or interest in or to said premises. This petition was sworn to by J. H. Lange as the duly authorized agent of the firm of Freidman, Keiler & Co., and was accompanied by the usual bond. At the August term, 1904, the judge declined to remove the case, and continued the hearing until the next

term of the criminal court in Buncombe county, and, the same coming on to be heard before Judge Shaw in Asheville, the application to remove the case was denied on the ground that Marion Reagan was a necessary party to the suit, and not merely a formal party, as set out in petition for removal. Thereupon the defendants, Freidman, Keiler & Co., obtained a transcript of the record, and filed the same in the Circuit Court on December 30, 1904.

The only question argued at the bar on this motion to remand is whether Marion Reagan is a necessary party to the suit. It is not denied, as I understand it, that he is only a tenant in possession of the land holding and caring for the same for the defendants, whom he avers, and who aver themselves, to be the true owners. I am not aware of any statutory law in North Carolina, nor has any been called to my attention, which would make the tenant in possession, when the true owners come in and make themselves parties defendant, anything more than a stakeholder, and without real interest in the controversy. Marion Reagan disclaims any interest whatever in the land, and says he is only a tenant at will. This is all that appears. How, then, can he be a necessary party to this controversy?

In Johnston R. Frog & Switch Company v. Buda Foundry & Mfg. Co. (C. C.) 148 Fed. 883, Judge J. B. McPherson delivers a very brief opinion on a question like this, as follows:

"The real dispute in this case is between the Johnston Railroad Frog & Switch Company, a Pennsylvania corporation, and the Buda Foundry & Manufacturing Company, a corporation of the state of Illinois. Of the three defendants remaining, the West End Trust Company is a mere stakeholder, and the interest of Edward H. Johnston and Charles H. Johnston is substantially identical with the interest of the complainant. They are its president and treasurer, respectively, are members of the board of directors, control the stock of the corporation, and took part in the passage of a resolution directing this suit to be brought against the Buda Company. Moreover, the Johnstons have filed an answer admitting the truth of all the facts set out in the bill, and submitting themselves in all respects to the decree of the court; and the answer of the trust company is to the same effect. It is therefore clear, under the decisions, that no real dispute exists so far as these three defendants are concerned, and that a proper arrangement of the parties would be a controversy in which the Johnstons should be classed with the complainant, and that the trust company may be treated as a formal party, having no interest in the result of the litigation. As a consequence, the Circuit Court has jurisdiction to entertain the suit. Removal Cases, 100 U. S. 457, 25 L. Ed. 593; Hutton v. Bancroft Co. (C. C.) 77 Fed. 481."

In Rogers v. Penobscot Mining Company, 154 Fed. 606, 610, 83 C. C. A. 380, 384, in an opinion for the Circuit Court of Appeals of the Eighth Circuit, Circuit Judge Sanborn says:

"Did the fact that the Penobscot Company was a corporation of the state of the citizenship of the complainants oust the jurisdiction of the Circuit Court? In a determination of the jurisdiction of the national courts and the right to remove causes of action to them, indispensable parties only should be considered, because all others may be dismissed or disregarded, if their presence would oust or restrict the jurisdiction or the right. Boatmen's Bank v. Fritzlen, 135 Fed. 650, 658, 68 C. C. A. 288, 296; Geer v. Mathieson Alkali Works. 190 U. S. 428, 432, 23 Sup. Ct. 807. 47 L. Ed. 1122; Bacon v. Rives, 106 U. S. 99, 104, 1 Sup. Ct. 3, 27 L. Ed. 69; Wormley v. Wormley, 8 Wheat. 421, 451, 5 L. Ed. 651; Wood v. Davis, 18 How.

467, 475, 15 L. Ed. 460; Sioux City Terminal R. & W. Co. v. Trust Company of N. A., 82 Fed. 124, 126, 27 C. C. A. 73, 75; Cella, Adler & Tilles v. Brown (C. C.) 136 Fed. 439, 442; Cella v. Brown, 144 Fed. 742, 754, 75 C. C. A. 608, 620. An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically and injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Every other party who has any interest in the controversy or subject-matter which is separable from the interest of the other parties before the court, so that it will not necessarily be directly and injuriously affected by a decree which does complete justice between them, is a proper party to a suit; but he is not an indispensable party, and, if his presence would oust the jurisdiction of the court, the suit may proceed without him. Sioux City Terminal R. & W. Co. v. Trust Company of N. A., 82 Fed. 124, 126, 27 C. C. A. 73, 75."

Many other authorities might be cited to the same effect, and all along the line of those referred to above.

I think the real, substantial, and interested parties to this controversy are James Wallin, on the one hand, and Joseph L. Freidman and John W. Keiler, on the other, that the presence of Marion Reagan is wholly unnecessary for the determination of the controversy, and that consequently the case is one removable to the Circuit Court.

The motion to remand to the state court must therefore be denied.