## WILSON *v.* OSWEGO TOWNSHIP.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 175. Argued and submitted December 20, 1893. — Decided January 3, 1894.

A township in Kansas delivered twenty-two of its bonds to a railroad company to aid in the construction of the company's road. The company contracted with B. to construct the road, and to receive these bonds in part payment. The bonds were delivered during the progress of the work to B., and to M., a non-resident of Missouri, as trustee, jointly, and were by them deposited in a Missouri savings institution in St. Louis to remain there until the completion of the work, and then to be delivered to B. upon the demand of himself and M.. B., claiming that he had performed all the work under his contract, demanded the bonds. The association refused to deliver them except upon the joint order of B. and M.. B. brought suit in St. Louis to recover them, making the association and the company defendants and serving process upon them, and making M. a defendant and serving upon him by publication. The township on its own motion intervened and was made party defendant. The savings association, M., and the township each answered separately. The railroad company was not served with process and made no answer. M. and the township then petitioned for the removal of the cause to the Circuit Court of the United States, setting forth that they were citizens of Kansas, that the plaintiff was a citizen of Missouri, and that the savings association had no interest in the result of the controversy. The prayer of the petition was granted, the cause was removed, and it proceeded to judgment in the Circuit Court. *Held,*

(1) That the savings association was a necessary and indispensable party to the relief sought for, and as that defendant was a citizen of the same State with the plaintiff there was no right of removal on the ground that it was a formal, unnecessary, or nominal party;

(2) That the removal could not be sustained on the ground that the controversy was a separable controversy between the plaintiff and the parties applying for and securing the removal.

THE case is stated in the opinion.

*Mr. Frederick H. Bacon* for the appellant.

*Mr. John O'Day* for appellees submitted on his brief.

MR. JUSTICE JACKSON delivered the opinion of the court.

The appellant, as the assignee of Edward Burgess, on August 10, 1886, filed his petition in the Circuit Court of the city of St. Louis, Missouri, against the Union Savings Association of that city, the Memphis, Carthage and Northwestern Railroad Company, a corporation organized under the laws of the State of Missouri, C. Montague, a non-resident of the State of Missouri, and certain unknown persons, to recover possession of twenty-two bonds of Oswego township, State of Kansas, of the value of $500 each, held by the Union Savings Association as bailee or trustee.

The petition alleged that the Memphis, Carthage and Northwestern Railroad Company was empowered to construct, maintain, and operate a railroad in the States of Missouri and Kansas, through the township of Oswego, a political subdivision of the county of Labette, in the State of Kansas; that said township was authorized and empowered to vote, grant, and issue to the railroad company its bonds to aid in the construction of the railroad through the county of Labette; that after due proceedings had been had the township of Oswego voted, issued, executed, and delivered to the railroad company twenty-two of its bonds of the value of $500 each, with interest coupons attached, bearing date September 2, 1872, numbered from 27 to 48, both inclusive; that the railroad corporation had previously entered into a contract with

Edward Burgess to construct a portion of its road, and that
Burgess under this contract engaged in the execution of a large
amount of such construction work on the railroad; that the
railroad company, under its contract with Burgess, was to pay
for the work and labor performed and to be performed with
the bonds of the township, including the bonds in question;
that on September 17, 1873, the company was indebted to
Burgess in a large sum of money for work and labor performed
on the railroad under his contract, which Burgess was still
engaged in carrying out; that the railroad company, at the
request of Burgess, and in consideration of the work performed
and to be performed by him, delivered to him, and to the
defendant, C. Montague, trustee, jointly, said twenty-two bonds
upon the agreement and understanding between the railroad
company, Burgess, and Montague that on the completion of
the work then in progress on the railroad, up to the amount
of the value of the twenty-two bonds, Montague would relin-
quish for himself, and for all others, these bonds to Burgess,
which would then become the absolute property of the latter;
and that to carry out this agreement the bonds, with all the
coupons thereto attached, were placed by Burgess and Mon-
tague, jointly, in the custody of the defendant, the Union
Savings Association, as trustee or bailee, where they were to
remain until the completion of the work on the railroad by
Burgess, when they were to be delivered by the Union Savings
Association to him or his assigns on the demand of himself
and Montague.

It was further set out in the petition that Burgess duly per-
formed his work upon the railroad, under and in accordance
with his contract, and became thereby entitled to the bonds,
and that Montague ceased to have any right, interest, or claim
thereto, either for himself or for any other person, and that
the bonds became the absolute property of Burgess, who
thereafter, for a valuable consideration, sold and assigned the
bonds in controversy, with all his right, title, and interest
therein and claim thereto to the plaintiff.

The plaintiff also stated that after the sale and assignment
of the bonds to himself he notified the defendant, the Union

Savings Association, of his ownership thereof, and demanded them, which the defendant refused to deliver without the assent of Montague.

The petitioner further alleged that he was informed and believed that certain persons, to him unknown, claimed an interest in these bonds and coupons, but that he could not state the nature of their interest nor the residence of the claimants.

The prayer of the petition was that the defendant, the Union Savings Association, be ordered to deliver the bonds and coupons in controversy to the plaintiff; that said unknown persons claiming an interest therein be duly notified by publication of the pendency of the suit, and be required to answer the same, and that the plaintiff have all such further relief as might be proper.

Upon the filing of this petition a summons was issued to the sheriff of the city of St. Louis, whose return thereon shows that the same was duly served upon the Union Savings Association in August, 1886, and upon the Memphis, Carthage and Northwestern Railroad Company on October 1, 1886. It further appears that publication was duly made for the defendant, C. Montague, and the unknown parties having an interest in the bonds in controversy.

On October 11, 1886, the Oswego township, on its own motion, intervened in the cause, and was made a party defendant thereto.

At the October term, 1886, the Union Savings Association filed its answer to the petition, in which, after stating its want of knowledge or information as to the incorporation of the Memphis, Carthage and Northwestern Railroad Company, and the delivery to that company of the bonds in question, and other general allegations of the petition, denied that the bonds described, or any bonds, were placed by Burgess and Montague, jointly, in its custody, there to remain until Burgess had completed the work on the railroad, when they were to be delivered to him or his assigns on demand; but admitted that on December 17, 1873, Edward Burgess and C. Montague, trustee, deposited with it bonds which it believed to be the

same referred to in the plaintiff's petition, and that it issued and delivered a receipt therefor to Burgess and Montague at their request, which was in words and figures as follows:

"Received, St. Louis, Dec'r 17th, 1873, of Edward Burgess and C. Montague, trustees, ten thousand five hundred dollars of Oswego township, Labette Co., Kansas bonds, issued to the Memphis, Carthage and Northwestern Railroad Company, the numbers being twenty-eight to forty-eight, inclusive (also bond No. 27, ⅗ of which [$300 worth] is to be held for same parties under same terms, in all $10,800 bonds), each bond for $500, due 20 years after date, dated Sept. 2nd, 1872, annual interest at ten per cent, represented by the nineteen coupons attached to each bond, all of such ten thousand eight hundred dollars of bonds subject to the joint order of said C. Montague, trustee, or his successors or successor in office, and the said Edward Burgess, upon the return of this receipt duly endorsed.

"(Signed)　　　JAMES B. LOVE, *Cashier*."

The defendant further answered that it had no knowledge that Burgess had completed the work on the railroad, nor of his having become the owner of the bonds, nor of his assignment to the plaintiff; and further, that before the commencement of the suit, Montague, trustee, acting in the premises on behalf of the Oswego township, had notified defendant that Burgess was not entitled to the bonds.

The defendant also stated that it was ready and willing to surrender the bonds to the party or parties legally entitled thereto, whenever it was settled in such manner as to protect defendant from further responsibility, and prayed that all claimants and the parties in interest might be brought into court and interplead for the bonds; and that it might be allowed a reasonable compensation for the custody thereof since the year 1873, and also a reasonable allowance for attorney's fees.

Montague and the Oswego township filed separate answers, in which they denied that the bonds in question had ever been delivered to the Memphis, Carthage and Northwestern Railroad

Company under any legal authority; alleged that the bonds were void because they were never lawfully issued under any authorized election and vote of the people of the township to the railroad company; that they were never, in fact, delivered to that railroad company, but that they were delivered to the Union Savings Association to secure the payment by Burgess of all debts, liabilities, and obligations which might be contracted by him in the prosecution of the work upon the railroad through the township and county; that he had never performed this work, according to his contract with the railroad company, and if the bonds had ever been regularly issued he had never acquired a title thereto. The Oswego township, therefore, claimed that the bonds should be surrendered to it for cancellation.

The Memphis, Carthage and Northwestern Railroad Company failed to answer the petition, and made default thereto.

On December 4, 1886, Montague and the Oswego township filed their petition to have the cause removed to the Circuit Court of the United States on the ground that at the commencement of the suit, and at the time of the motion, they were citizens of the State of Kansas, while the plaintiff was a citizen of the State of Missouri; that the Union Savings Association, though a citizen of the State of Missouri, was only trustee of the bonds, and had no interest in the result of the controversy, and that the Memphis, Carthage and Northwestern Railroad Company, named as a party defendant, had never been served with process or entered its appearance in the suit.

On this petition, and proper bond tendered therewith, the suit was removed into the United States Circuit Court for the Eastern District of Missouri. After such removal was effected the plaintiff moved the court to remand the cause to the Circuit Court of the city of St. Louis on the grounds, first, that the application was not made under the second paragraph of section 639 of the Revised Statutes; second, that the cause was not one in which there could be any final determination of the controversy as to the parties applying for the removal without the presence of the other defendants; third, that the

suit was not one between citizens of different States, but was one in which the plaintiff and the defendant, the Union Savings Association, and the Memphis, Carthage and Northwestern Railroad Company, were citizens of Missouri, while Montague and Oswego township were citizens of the State of Kansas; fourth, that the suit was not one in which there was a separable controversy between citizens of different States, and that the sheriff's return, as set out in the record, showed that the defendant, the Memphis, Carthage and Northwestern Railroad Company, had been duly served and brought before the court prior to the filing of the petition for the removal of the cause.

The motion to remand was, however, overruled, and thereafter various amended pleadings were filed in the Circuit Court, including a cross-bill on the part of the Oswego township to have the bonds in controversy declared void and returned to it for cancellation.

Upon the hearing of the cause the court entered a final decree holding that the bonds in question were issued without authority of law, and that the same should be delivered by the Union Savings Association to the Oswego township for cancellation; and, it further appearing that bond No. 27, referred to in the pleadings, had been appropriated by the Union Savings Association, and was no longer in its possession, a decree was entered against it for the value of the missing bond, subject to a deduction for the amount of compensation allowed it as custodian of the bonds. From the final decree the present appeal is prosecuted.

The question first presented for our consideration by the appellant is that the cause was improperly removed from the state court to the United States Circuit Court, and that his motion to remand the same to the state court should have been sustained for the reason that the defendants, the Union Savings Association and the Memphis, Carthage and Northwestern Railroad Company, were citizens of the same State as the plaintiff, and that the suit could not be finally disposed of without the presence of these defendants, both of whom were proper, if not necessary, parties.

Against this position it is urged, on behalf of the appellees,

that the real controversy in the case was wholly between the plaintiff, and the Oswego township, and C. Montague, and could be fully determined between them without reference to the other defendants; that the railroad company and the Union Savings Association were, at the most, only nominal or formal parties.

The removal in this case was had under the second section of the act of 1875, but under which clause of that section does not distinctly appear. The first clause of the section relates to removals of controversies that are not separable, and in which all the parties on one side of the suit are citizens of different States from those on the other side, which is a necessary condition to enable the Circuit Court to take jurisdiction of the entire suit. Under this clause, all of the plaintiffs, if there are more than one, or all the defendants, there being more than one, must, in order to remove the suit, unite in the petition therefor; and it is settled by the authorities that to enable a suit to be removed under this first clause of the section, when the ground for removal is diversity of citizenship, the party to the suit on the one side, whether consisting of one or more persons, must have a state citizenship different from that of the party on the other side, whether consisting of one or more persons; and that, for the purpose of removing the suit, these parties may be placed " on different sides of the matter in dispute according to the facts," so that all those on one side will be " citizens of different States from those on the other," and that this being done, those on either side may remove the suit, provided that all unite in the petition therefor.

The situation of the parties in this case, in connection with the relief sought by the petition, does not admit of placing the parties on different sides of the matter in dispute, so that those on one side will be citizens of different States from those on the other, for the purpose of removing the suit, unless it can be held that both the Memphis, Carthage and North-western Railroad Company, which was made a party defendant, and duly served, and the Union Savings Association, were merely nominal, formal, and unnecessary parties, as

these corporations were citizens of the same State as the plaintiff.

It is settled that the jurisdiction of the Federal courts will not be defeated by the mere joinder or non-joinder of formal parties. *Wormley* v. *Wormley*, 8 Wheat. 421, 451.

In *Wood* v. *Davis*, 18 How. 467, 470, where formal or nominal parties were united with the real parties to the litigation, it was held that such joinder would not oust the jurisdiction of the Federal court, if the citizenship of the real parties was such as to confer it, but, in speaking for the court, Mr. Justice Nelson said, in that case: " This is not a case of a stakeholder, or the holder of a deed as an escrow, where a trust has been created by the parties, which is sought to be enforced by one of them. . In all such cases the trustee may be a proper party, as he has a duty to perform, and which the court may enforce, if improperly neglected or refused."

In *Bacon* v. *Rives*, 106 U. S. 99, where the complainants were citizens of the State in which the suit was originally brought, and the defendant, the real party to the controversy, against whom relief was sought, was a citizen of another State, his right to remove the suit to the Circuit Court of the United States was held not to be defeated upon the ground that the citizenship of another defendant, who was a stranger to that controversy, and who occupied substantially the position of a mere garnishee, was the same as that of the complainant. In that case, however, the relief sought was against a non-resident defendant, as the real party to the controversy. In the present case no relief is sought against the removing parties.

These authorities do not control in this case, for the reason that the relief sought by the plaintiff in his bill, or petition, was the recovery of the possession of the bonds held by the Union Savings Association. He sought no active or affirmative relief against any other defendant to the suit. He did . not even make the Oswego township a party defendant. By his petition he raised no question whatever as to the validity of the bonds or the regularity of their issue. He alleged that they were regularly issued by the township of Oswego to the

Memphis, Carthage and Northwestern Railroad Company, and that by an arrangement between the railroad company and C. Montague, trustee, and Edward Burgess, they were placed in the possession of the Union Savings Association until Burgess should complete his contract with the railroad company, when the bonds were to be delivered to Burgess, or his assignee. The plaintiff, as his assignee, claimed that Burgess had complied with and completed his contract, thereby becoming the owner of the bonds, and entitled to their possession; and that thereafter he assigned his right, title, and interest in the same to the plaintiff, who by his petition only sought to recover possession of the bonds. The Union Savings Association, being the bailee or trustee of the bonds, was a necessary and indispensable party to the relief sought by the petition, and that defendant, being a citizen of the same State with the plaintiff, there was no right of removal on the part of Montague, or of the intervening defendant, the Oswego township, on the ground that the Union Savings Association was a formal, unnecessary, or nominal party.

Furthermore, under the allegations of the petition that the bonds had been issued to the Memphis, Carthage and Northwestern Railroad Company by the Oswego township, by authority of law, and that it had contracted with Burgess to pay him the bonds in question for work and labor performed and to be performed by him in the construction of its line of railroad, the railroad company was a proper, if not a necessary party, as it had an interest in the question whether Burgess had performed his contract and earned the bonds.

Considering the nature of the suit and the relief sought thereby, these defendants cannot be treated and regarded as purely formal and unnecessary parties. The character of the relief sought made the Union Savings Association, which occupied the position of a bailee or trustee, a necessary and indispensable party.

But can the removal be sustained under the second clause of the second section of the act of 1875, on the ground that the suit presented a separable controversy between the plaintiff

and the parties applying for and securing the removal? We think not. The question whether there is a separable controversy warranting a removal to the Circuit Court of the United States must be determined by the state of the pleadings and the record of the case at the time of the application for removal, and not by the allegations of the petition therefor, or the subsequent proceedings which may be had in the Circuit Court. *Barney* v. *Latham*, 103 U. S. 205.

The original petition, in the present case, filed in the state court, and the relief sought thereunder, did not present a controversy which was wholly between citizens of different States, or one that could be finally determined as between the plaintiff and the removing parties, without the presence of the Union Savings Association, and could not, therefore, be removed separately or jointly by either Montague or the township of Oswego.

The fact that the Memphis, Carthage and Northwestern Railroad Company did not answer, but made default, is unimportant, and placed the parties in no different position with reference to a removal of the cause than they would have occupied if that company had answered, and either admitted or denied the rights of the plaintiffs. *Putnam* v. *Ingraham*, 114 U. S. 57, 59.

The petition filed in the state court did not present several causes of action, some of which were against the resident defendants and others against the non-resident defendants, but embraced a single cause of action and a single ground of relief. It did not, therefore, come within the authorities which allow a removal on the ground of a separable controversy such as entitled the non-resident defendants to remove the cause.

Without reviewing the authorities on the subject of removal of causes on the ground of separable controversies, within the meaning of the second clause of the second section of the act of 1875, we deem it sufficient to cite the following cases as fully sustaining the conclusion to which the court has arrived, that the pleadings in the case under consideration present no ground on which to base the right of removal. *Brooks*

v. *Clark,* 119 U. S. 502, 511; *Brown* v. *Trousdale,* 138 U. S. 389, 396; *Torrence* v. *Shedd,* 144 U. S. 527, 530.

In this last cited case Mr. Justice Gray, speaking for the court, sums up the authorities on the subject as follows: "But in order to justify such removal on the ground of a separate controversy between citizens of different States there must, by the very terms of the statute, be a controversy ' which can be fully determined as between them;' and by the settled construction of this section the whole subject-matter of the suit must be capable of being finally determined as between them, and complete relief afforded as to the separate cause of action, without the presence of others originally made parties to the suit."

Considering the character of the relief sought by the original bill, and the situation of the parties, it cannot be properly said that the whole subject-matter of the suit was capable of being finally determined between the plaintiff, on the one side, and Montague and the Oswego township, on the other, without the presence of the Union Savings Association, so as to warrant the removal as a separable controversy.

The cases of *Thayer* v. *Life Association,* 112 U. S. 717, *St. Louis & San Francisco Railway* v. *Wilson,* 114 U. S. 60, and *Crump* v. *Thurber,* 115 U. S. 56, are not distinguishable in principle from the present case. In the former case the situation of the parties was substantially the same as in the case under consideration, and it was held that the resident corporation, as the holder of the stock which the complainant sought to have transferred to himself, was such an indispensable party as would prevent the removal of the cause from the state to the Circuit Court.

We are, therefore, of opinion that the cause was wrongfully removed and that the motion to remand should have been sustained. The decree below is

*Reversed with costs, and the cause remanded to the Circuit Court of the United States for the Eastern District of Missouri with directions to remand the suit to the state court from which it was originally removed.*