## LOVING v. ARNOLD et al.

(Circuit Court, D. Kentucky. November 8, 1897.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—PREFERENCE—PARTIES.

Act Ky. 1856 provides that, in suits to set aside preferential transfers of property by an insolvent debtor, the transferee and the debtor are the only necessary parties defendant. Act Ky. March 16, 1894, relating to voluntary assignments, provides that property transferred in preference shall vest in the assignee, and he shall bring suit to recover same, having therein all the remedies of creditors. Held, that the provisions of the two acts give to the assignee not only the right to recover of the transferee the property fraudulently transferred, but also the right to investigate the bona fides of transfers of other property which may not have been fraudulent or preferential, and that, in a suit by an assignee to recover property conveyed in preference, in which the bill contains a prayer for general relief, the insolvent debtor is a necessary party.

2. SAME.

An assignee, under a general assignment pursuant to the Kentucky statutes, does not represent the entire interest of the assignor in a suit to set aside a preferential transfer of property, since invalidating the transfer will reinstate as obligations against the assignor debts which were paid by the transfer, thereby making him directly interested in the suit and a necessary party thereto.

D. I. Heyman, for complainant.

James Quarles (Quarles, Spence & Quarles, of counsel), for defendants.

BARR, District Judge. This motion presents a new and interesting question. The complainant, as assignee of W. H. Dillingham, has brought suit against Charles E. Arnold and Charles and Nathan Allen, partners, under the style of N. R. Allen's Sons, and W. H. Dillingham, for the purpose of setting aside a conveyance made by Dillingham and wife on the 27th of March, 1897, to Charles E. Arnold, of a house and lot on Broadway street, in this city. It is alleged that this conveyance was made by Dillingham when insolvent, for the purpose of preferring the Allen's Sons in certain debts held by them against him to the exclusion of other creditors. This deed to Arnold is absolute on its face, but it is alleged that it was made to him as trustee, to be

held by him for the use and benefit of Charles and Nathan Allen as partners aforesaid, and that the real consideration of said conveyance was the payment of certain debts due by Dillingham to the Allens. The amount of these debts is alleged by the plaintiff to be unknown, but it is alleged that they are less than the $26,000, the recited consideration in the deed to Arnold.  The plaintiff brings the suit as the assignee of W. H. Dillingham, under a deed of general assignment, executed to him on May 26, 1897, and under the provisions of the Kentucky statutes commonly known as the act of 1856, and the amendment thereto adopted March 16, 1894.  The prayer of the bill is to have the conveyance to Arnold set aside as a fraudulent preference, and that the court adjudge that the title of the property conveyed to Arnold vests in the complainant, as the assignee of Dillingham, and for the benefit of all of his creditors, and he "further prays for all proper general and equitable relief."  The case was removed on the petition of Arnold and Charles and Nathan Allen, and 'in the petition it is alleged that the controversy in the suit is wholly between the plaintiff and said petitioners, and that the defendant William H. Dillingham has no interest in said controversy, and is only a formal and unnecessary party to said suit.  The proper allegations as to diverse citizenship of Loving, the plaintiff, and the Allens and Arnold, are made, and nothing is stated as to the citizenship of Dillingham, who was before the state court on actual service of process. We must, in considering the motion to remand, assume that Dillingham has not a diverse citizenship with the complainant, as there is nothing alleged.  The removal, therefore, is upon the theory that Dillingham has no interest in the controversy, and is only a formal, and not a necessary, party.  This being the contention of the removing defendants, the inquiry is whether or not Dillingham is a necessary party in the suit.  If he is a necessary party, then the case should be remanded.

It is quite clear that there is not a separable controversy which would permit a removal.  The suit is brought under what is commonly known as the act of 1856, which prohibited all sales, mortgages, conveyances, or assignments of debtors, and any act or device done or resorted to by a debtor in contemplation of insolvency, with a design to prefer one or more of his creditors to the exclusion, in whole or in part, of the others.  This act declares that such sales, mortgages, assignments, or devices shall operate as an assignment or transfer of all of the property and effects of such debtor, and shall inure to the benefit of all of his creditors, except as therein provided, in proportion to the amounts of their respective demands, including those which are future and contingent.  See Ky. St. c. 54, art. 2, §§ 1910-1916; Sess. Acts 1891-93, c. 119, p. 398.  This act also provides that, to set aside such a preference, there must be a suit filed in equity by some person interested within six months after the preferential sale, conveyance, or mortgage is lodged for record, or the property or effects transferred or delivered, and that "any number of persons interested may unite in the petition, but it shall not be necessary to make any persons defendants except the debtor and the transferee."  This act only

authorized those interested to bring the suit to set aside the preferential sale, mortgage, or conveyance, and hence an assignee of the debtor could not bring such a suit under the act of 1856, but, if a preference was given before the general assignment to such assignee, it would have the legal effect of setting aside the general assignment, as the preference which is denounced by the statute operated to transfer all of the property and effects of said debtor as of the date of the giving of the preference. But by an act approved March 16, 1894, entitled "An act relating to voluntary assignments," it is enacted (section 11, c. 83, p. 192, Act 1894) that:

"If the assignor before making the deed shall have made a preferential or fraudulent transfer, conveyance or gift of any of his property or a fraudulent purchase of any property in the name of another, the property so fraudulently transferred, conveyed or purchased shall vest in the assignee and it shall be his duty to institute such proceedings as may be necessary to recover the property so conveyed or disposed of, and to this end he shall have the remedies which the creditors or any of them might exercise. If the assignee upon demand shall refuse to institute such proceedings any creditor may do so and the property so recovered shall become a part of the estate and shall be distributed as other assets."

This provision is in an act entitled "An act relating to voluntary assignments," which prescribes the effect of a general assignment, and the duties of the assignee thereunder. See, also, Ky. St. c. 7, § 84. It is insisted by counsel for the defendant that this act of 1894, which gives a right of suit to an assignee of a general assignment, has made the debtor an unnecessary party to proceedings like this, as it is claimed that all of his right, title, and interest has passed by the general assignment to the assignee. It will be observed that, by the terms of the original act of 1856, such preferential conveyances of debtors operate as an assignment and transfer of all the property and effects of said debtor, and gives control to the court of equity having jurisdiction of the property and effects of said debtor upon the petition of one or more of his creditors. To give effect to the provisions quoted of the act of 1894, it must be assumed that general assignments made after such preferential sales or conveyances, which are prohibited by the act of 1856, are not set aside and made invalid, but that the assignee, under a general assignment subsequently made, not only takes all of the property of the debtor to which he then has title, but also the title to the property which he had previously conveyed as a preference to some of his creditors, and a right to sue therefor; thus modifying the broad provision of the act of 1856, which declares that a preferential sale or conveyance shall operate as a transfer of all the property and effects of the debtor as of the time of said preference. If this is not so, then the provision of the act of 1894, which has been quoted, is not applicable at all to preferences given by a debtor which are prohibited by the act of 1856. It will be observed that in the section of the act of 1894 which is quoted nothing is stated as to the property and effects of the debtor which have not been preferentially sold or conveyed by the debtor, but which may not have been conveyed by him under a general deed of assignment to the assignee, subsequently executed. The language of this section in that respect

is: "The property so fraudulently conveyed, transferred or purchased shall vest in the assignee, and it shall be his duty to institute such proceedings as may be necessary to recover the property so conveyed or disposed of, and to this end he shall have the remedies which the creditors or any of them might exercise." It would seem to me, however, construing the entire section, that it is intended to give, and does give, to the assignee of a general assignment all the rights which creditors of the debtor have under the act of 1856. This construction would seem to be implied by the latter part of the section, which provides "that if the assignee on demand shall refuse to institute such proceedings any creditor may do so, and the property so recovered shall become a part of the estate and be distributed as other assets." If we assume that the proper construction of the two acts is to give the complainant the right, if he makes good the allegations of his bill, not only to have this deed of the 26th of March set aside, but also to investigate, and have the debtor and others surrender any property which the debtor had as of that day, and which has not been bona fide disposed of by him and for a good consideration, between the 27th of March and the 26th of May, 1897, it follows that Dillingham is a necessary, and, indeed, an indispensable, party to such relief. If the complainant is entitled to such relief, his prayer for "all proper general and equitable relief" would cover this.

If, however, we are wrong in this, and the complainant's right of action is confined to the property conveyed to Arnold, we still think Dillingham is a necessary party, since, if the conveyance to Arnold is set aside, the debts against Dillingham, which that conveyance satisfied and paid, will be valid obligations, against not only the estate of Dillingham in the hands of his general assignee, but against him individually. The question, therefore, of preferential sale or not, is a question in which he has a direct interest, since the property which has been conveyed by him, and his debts to the Allens paid thereby, may not be sufficient, with the property generally assigned, to pay all of his debts, including the Allen debt, and the unpaid balance would be an unpaid balance against him. The conveyance from Dillingham to Arnold is a valid one, though it gives the Allens a preference, unless proceedings are taken by creditors or parties in interest within six months from that conveyance, as the Kentucky law does not prohibit, generally, a preference in contemplation of insolvency of a debtor to a creditor, but it is only in the event that it comes within the provisions of the act of 1856, and proceedings are taken thereunder, that such conveyances are set aside. The complainant in this case takes the rights of the creditors, and could not, by virtue of any right of Dillingham, the assignor, have this conveyance set aside; therefore he does not represent in this proceeding the interest of Dillingham, but that of Dillingham's creditors.

In addition to the interest which Dillingham has in this litigation, we think the statute of 1856 requires that he should be a party. Such seems to be the decision of the Kentucky court of appeals. See Bank v. McAllister's Adm'r, 83 Ky. 151, and McCallister's Adm'r v. Bank, 80 Ky. 685. We have read the cases cited by counsel for the defendant in his excellent brief, and do not think they sustain the conten-

tion, if we are correct in our construction of this statute. The case of Buffington v. Harvey, 95 U. S. 102, was a case in bankruptcy, in which the court said:

"The bankrupt had no interest to be affected, except what was represented by his assignee in bankruptcy, who brought the suit. As to the bankrupt himself, the conveyance was good. If set aside, it could only benefit his creditors. He could not gain or lose, whatever might be decided."

Here there is no provision of the Kentucky statute by which Dillingham could be released from the indebtedness which might be adjudged against him, by reason of the setting aside of this conveyance; hence he had a direct interest, and might gain or lose, as there is no provision of the statute to discharge him from this debt. The several cases referred to, reported in the Federal Reporters, fall short of the case at bar. The case of Judah v. Barb-Wire Co., 32 Fed. 561, is not in point, as there the defendant Judson, who held certain warehouse receipts, failed to answer the suit, and a receiver was appointed, and the receipts were surrendered to him by Judson. After the default of Judson, and while the warehouse receipts were in the hands of the receiver, the barb-wire company removed the case, and, on a motion to remand, the court said:

"This case was ended, so far as Judson was concerned, and the only controversy left open was whether the action of Sherman & Marsh [the debtors] in transferring these receipts to Judson was effective in law to clothe the barb-wire company with a valid title in them as their assignee. The court, in other words, is only called upon to decide whether these receipts belonged to the complainant by virtue of the assignment to him for the benefit of the creditors of Marsh, or whether they are wholly or in part to be applied in the manner contracted for by the transfer to Judson. Judson appears, from the allegations in the bill and his own confession of the truth of these allegations, to have no interest now in the controversy, and had none at the time of the application for removal."

And the court refused to remand the case.

We think our conclusion is fully sustained by the reasoning of the supreme court of the United States in Mitchell v. Smale, 140 U. S. 406, 11 Sup. Ct. 819, 840; Wilson v. Oswego Tp., 151 U. S. 57, 14 Sup. Ct. 259; Merchants' Cotton-Press & Storage Co. v. Insurance Co. of North America, 151 U. S. 383, 14 Sup. Ct. 367. We conclude, therefore, that the case should be remanded; and it is so ordered.