## GARRETSON et al. v. NATIONAL SURETY CO.*

### No. 6569.

Circuit Court of Appeals, Fifth Circuit.
March 17, 1933.

Cody Fowler, N. B. K. Pettingill, and Chester H. Ferguson, all of Tampa, Fla., for appellants.

Peter O. Knight, C. F. Thompson, and A. G. Turner, all of Tampa, Fla., for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was a bill in equity filed on January 27, 1932, by the appellee, the surety on a bond given by the appellants, who were partners doing business under the name Lakewood Manor Construction Company, for the faithful performance of a contract entered into by the appellants with the United States to furnish all labor and materials and perform all work required for the construction and finishing complete of specified public work at Langley Field, Va., which was referred to as Langley Field Project. In addition

*Rehearing denied April 24, 1933.

to the appellants, Andrew W. Mellon, Walter O. Woods, and Patrick J. Hurley were named as defendants. As to the three last-named persons, who were not served with process and did not appear in the case, the bill alleged that they were sued in their respective official capacities as Secretary of the Treasury, as Treasurer of the United States, and as Secretary of War. The bill contained allegations to the following effect: By a provision of the written application by the appellants to the appellee that the latter become surety on the bond mentioned, the appellants, in consideration of the execution of that bond by appellee, assigned, transferred, and conveyed to the appellee all the deferred payments and retained percentages, and any and all moneys and properties that may be due to appellants at the time of any breach or default in said contract, or that thereafter may become due and payable to appellants on account of said contract. Of the estimated amount of work performed by the appellants under said contract up to October 20, 1931, when the last progress payment was made, there had been retained the sum of about $1,554.41 under the terms of the contract. The total amount of the unpaid contract price on the date of completion was about $6,218.77. Under said bond appellee was equally bound with appellants, who are insolvent, for bills for labor and materials incurred by appellants to the amount of about $9,131.50. Paragraph 10 of the bill contained the following: "The Construction Quartermaster having charge of the contract at Langley Field has stated a final account under the aforementioned contract. That the said Lakewood Manor Construction Company has signed, or is about to sign, voucher for about $6,218.77, and present the same for payment. Plaintiff is informed and believes that the Lakewood Manor Construction Company has, without plaintiff's consent, and in derogation of its rights, attempted to assign the amount due it as retained percentages and final payment to Old Point National Bank, and has placed in the hands of the finance officer of the United States Army at Fortress Monroe a writing directing that check for retainage and final payment be sent to said bank, and plaintiff alleges that it is the purpose of the Lakewood Manor Construction Company to collect the amount called for by said voucher and apply the same to debts owed by it to divers and sundry persons, firms, and corporations and not incurred in connection with the Langley Field Project."

The bill contained prayers that appellants be enjoined and restrained from re-

ceiving the amount credited to them on account of said Langley Field Project, or any part thereof, or any check or warrant for the same; from disposing of, cashing, or indorsing any such voucher, draft, order, check, or warrant, until further order of the court; that they be temporarily enjoined and restrained from receiving any such draft, warrant, order, or check issued in payment of the balance due from the United States on account of the Langley Field Project; and, in the alternative, that a receiver or receivers be appointed by the court with power and authority to sign the final voucher and to demand and receive from the United States, or its proper officers, the full amount credited by the War Department to appellants on account of and in connection with said Langley Field Project, and to hold and disburse the same until further order of this court, and for the benefit and protection of the appellee. The cause was submitted to the court upon the bill of complaint, a motion to dismiss filed by the appellants, and an affidavit made by Ernest L. Garretson, one of the appellants, and attached to that motion. That affidavit contained the following: "Upon entering into the contract attached to the Bill of Complaint therein as 'Exhibit A,' affiant and his co-partner, Henry F. Winter, doing business as the Lakewood Manor Construction Company, applied to Old Point National Bank, a banking corporation organized under the laws of the United States, and having its only office and place of business in Phœbus, State of Virginia, to supply sufficient funds to finance operations under said contract; that said bank acceded to said request and agreed to furnish such moneys as might be necessary to meet obligations incurred by said partnership for labor performed and materials furnished in the execution and carrying out of said contract; that upon the making of such agreement affiant and his co-partner at the request of said bank delivered to it an order upon the proper officials to deliver to said bank all vouchers for the payment of money as said contract progressed, which order was recognized and thereafter complied with; that said bank complied with its said agreement and thereafter from time to time paid such amounts as it was requested by said co-partnership to pay for labor performed and materials furnished as aforesaid, and was also from time to time reimbursed for such payments to the extent of the payments received from the United States Government as installment payments were received; and affiant says that no moneys were paid out by said bank under the agreement aforesaid except amounts used for the payment of bills for labor performed and material furnished under the contract aforesaid. Affiant further says that the voucher referred to in Paragraph 10 of the Bill of Complaint herein was received by affiant and his co-partner before the filing of said Bill of Complaint, to-wit, on or about the 12th day of January, 1932, and was so before knowledge of the filing of said bill turned over and manually delivered to said Old Point National Bank, Phœbus, Virginia, under the agreement aforesaid in order that the amount represented thereby might be collected by said bank and applied by it to the repayment of the balance due for funds used by it in payment of labor performed and material furnished under the contract aforesaid, which voucher, to the best of affiant's knowledge and belief, is still in the possession and control of said Old Point National Bank, and that the said balance due said bank for payments made by it as aforesaid over and above all amounts received by said bank in repayment of payments so made, either from the United States or from these affiants, exceeded by a substantial sum the amount named in said voucher, by reason whereof affiant and his co-partner will still remain indebted to said bank for payments made by it for the purpose aforesaid after the amount due under the terms of said voucher has been collected by said bank and applied to said indebtedness. * * * Affiant further says that it is not true, as alleged in Paragraph 14 of said bill, that the draft, warrant, check or the fund from which the draft, warrant and check will be paid were at the time of the filing of said bill, or have been at any time thereafter, within the jurisdiction of this Court, or that defendants co-partners under the name of Lakewood Manor Construction Company are endeavoring to obtain possession of the same, or are demanding the same, or payment thereof from Patrick J. Hurley, Andrew W. Mellon, or either of them, or their authorized agents or any other party charged with the duty of making payment thereof; but avers to the contrary that the only one of the documents so mentioned in said paragraph at any time in the possession of said defendants was the voucher hereinbefore referred to, and that said voucher has been turned over, delivered and transferred to said Old Point National Bank for collection and disposal for the purposes hereinbefore specified, and neither affiant nor his co-partner Winter has had any interest therein or in the proceeds to be derived therefrom since the delivery thereof

to said Old Point National Bank, as hereinbefore stated." Following that submission, the court rendered a decree denying the motion to dismiss the bill, and appointing a temporary receiver, with full power and authority to sign voucher and demand and receive from the United States, or its proper officers, the full amount of funds credited by the War Department to appellants on account of or in connection with said Langley Field Project, and to hold and disburse the same until further order of the court. That decree ordered the receiver appointed to send to the Secretary of the Treasury of the United States, to the Treasurer of the United States, and the Secretary of War of the United States, a certified copy of that decree; and that until further order of the court the said receiver is authorized forthwith to take possession and have exclusive control, possession, and custody of the sum of $5,757.97, now held by the United States government as a stakeholder. The appeal is from that decree.

It appears from the allegations of the bill and the affidavit above quoted from that the moneys payable by the United States under the contract with the appellants, and the voucher therefor signed by the appellants, were claimed by the Old Point National Bank, which was not made a party to the cause, and that, at the time the bill was filed, that bank was in possession of said voucher, and the appellants, who alone became parties defendant by service of process or appearance, had no interest in those moneys or the voucher therefor. The suit concerns the collection, custody, and disposal of a specific fund, to which the Old Point National Bank, not a party to the suit, has a claim, for which it holds a voucher duly signed by the payees thereof, and of which it might be wholly deprived by a final decree in the case. In the controversy raised by the suit that bank has an interest of such a nature that a final decree cannot be made without affecting that interest. Such a decree cannot properly be made in a suit to which one who is directly interested in resisting the granting of the relief sought therein is not a party. We are of opinion that it appears from the record that the bank was an indispensable party to the suit. Williams v. Bankhead, 19 Wall. 563, 22 L. Ed. 184; Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Wilson v. Oswego Township, 151 U. S. 56, 14 S. Ct. 259, 38 L. Ed. 70; Gregory v. Stetson, 133 U. S. 579, 10 S. Ct. 422, 33 L. Ed. 792. No relief under the bill filed being properly grantable in the absence of an indispensable party, the interlocutory decree appealed from was erroneous. Arkansas Southeastern R. Co. v. Union Sawmill Co. (C. C. A.) 154 F. 304, 311. That decree is reversed, and the cause is remanded, with direction that the bill be dismissed.

Reversed.