**JOHNSON et al. v. MARSH et al.**
No. 168.

District Court, D. Nebraska,
Lincoln Division.

March 18, 1943.

O. B. Clark, of Lincoln, Neb., for plaintiffs.

Raymond M. Crossman and Ralph M. West, both of Omaha, Neb. (Brown, Crossman, West, Barton & Fitch, of Omaha, Neb.), for defendant United States Fidelity & Guaranty Co.

DELEHANT, District Judge.

The plaintiffs present an application or motion to remand this suit to the District Court of Saline County, Nebraska, whence it was heretofore removed to this court upon the petition of the defendant, United States Fidelity & Guaranty Company, a Maryland corporation, hereinafter referred to as "the company". The presence of an action involving the jurisdictional amount is granted.

For the purpose of disclosing the issue presented upon the motion, it seems hardly to be necessary to record here an exhaustive analysis of the petition of the plaintiffs which, with its exhibits, is copied in some twenty-two pages of the transcript on removal. By it, twenty-two plaintiffs, all citizens and residents of states other than either Nebraska or Maryland, bring an action against four other persons of like residential status and interest with the plaintiffs, who allegedly have refused to join as plaintiffs, and also against other adversely interested defendants including Bert M. Marsh and Fred H. Bruning, citizens and residents of Nebraska, both individually and as executors of the estate of Dewitt C. Marsh, deceased, and the company as surety on their executors' bond, Arnold C. Blattspieler, a citizen and resident of Nebraska, both individually and as special administrator of the same estate and the corporate surety on his bond, a nonresident of both Nebraska and Maryland, and also one Retta McGee Dunning and Harry Marsh, both residents of Iowa.

The petition sets out in detail certain contractual arrangements of long standing between Dewitt C. Marsh and his wife, Ellen C. Marsh, a childless couple, whereby, upon the death of the survivor of them, a distribution of their substantial property, real and personal, title to which stood ultimately in Dewitt C. Marsh, should be made one-half to the heirs at law and next of kin (exclusive, in the case of the one first dying, of the survivor of them) of each of them; the death of Ellen C. Marsh before that of Dewitt C. Marsh, and his subsequent demise; the status of the plaintiffs and the four similarly interested defendants as the heirs at law and next of kin (inclusive of certain assignees and successors of heirs) of Ellen C. Marsh; the execution by Dewitt C. Marsh shortly after Ellen C. Marsh's death of a will effectuating the contractual purpose; his subsequent physical and mental decline; the intrusion into his confidence of Bert M. Marsh under circumstances imposing upon him the status of one exercising a virtual domination over an aged and mentally infirm person, during which time he secured possession and control of the alleged agreements and will which he thereafter suppressed and permanently concealed; the formation of a fraudulent conspiracy and scheme by Bert M. Marsh, Fred H. Bruning, Arnold C. Blattspieler, Harry Marsh and Retta McGee Dunning, to defraud the heirs and next of kin of Ellen C. Marsh of the fruits of the agreements and will; the fraudulent procurement by Bert M. Marsh, in furtherance of the conspiracy, of the signature of a new will by Dewitt C. Marsh while in a state of senile incompetence and in the face of his imminent death, in which the agreements were disregarded and his property was given, after payment of certain minor legacies, to his nephews and a niece, including among others the defendants, Harry Marsh, Bert M. Marsh and Retta McGee Dunning, and Bert M. Marsh and Fred H. Bruning were designated as executors; the fraudulent concealment by the conspirators of Dewitt C. Marsh's death; the presentation for probate by Bert M. Marsh and Fred H. Bruning of the second will and the procurement by fraud upon the courts and the adversely interested parties of its admission to probate and the dismissal of an abortive appeal from probate; the qualification of Blattspieler as special administrator and his giving of his bond in due form; the like qualification of the designated executors, Bert M. Marsh and Fred H. Bruning, and the giving of their bond in due form as set out in full with the company as sole surety thereon; the maladministration of the executors in and by the inclusion in their inventory, and their complete administration and distribution under the probated will, of the entire property standing in the name of Dewitt C. Marsh, notwithstanding the agreements and the initial will, and like inclusion by the special administrator, all in fraud of the rights and to the injury of the adversely interested parties, including the plaintiffs, and in pursuance of the alleged conspiracy.

The prayer is for an accounting of all property coming into the possession of the defendants and each or any of them by reason of the administration of the estate under the probated will, and of the amounts due the plaintiffs by reason of the inclusion within the property affected by the will of the one-half of the family fortune allegedly belonging to those claiming through Ellen C. Marsh, and for judgment and decree against the offending defendants and each of them for the amounts so found due with costs, for specific relief in respect of certain lands, and for general relief.

The company resists the application to remand. It contends that the petition presents, as between the plaintiffs and the defendants situated similarly to them on the one hand and the company on the other hand, a "controversy which is wholly between citizens of different states, and which can be fully determined as between them" in consequence of which such controversy is separable and the company may remove the entire suit to this court.

The court is unable to agree with the company's contention that the case presents a separable controversy under circumstances allowing removal, within the terms of the statute and the reasoning of the controlling decisions.

The applicable statute is Title 28 U.S.C.A. § 71, of which the material portion follows: "Section 71. (Judicial Code, Section 28, Amended.) * * * Any other suit of a civil nature, at law or in equity, of which the district courts of the United States are given jurisdiction, in any State court, may be removed into the district court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that State. And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district."

Here, more especially, the second sentence of the quoted language is involved but, as certain of the decisions later cited make manifest, it is to be considered in due association with the sentence which precedes it as well as some other comparable but presently unquoted portions of the section.

■ It is elemental that in the absence of fraudulent joinder the existence of a separable controversy within the language of the act is to be determined from the complaint (here the petition) when the petition for removal is filed; and that the nature of the controversy arising under the pleadings and the right to allege a joint, and therefore nonseparable, controversy is to be determined by the law of the state in which the pleading is filed. Southern R. Co. v. Miller, 217 U.S. 209, 30 S.Ct. 450, 54 L.Ed. 732; Chicago R. I. & P. R. Co. v. Schwyhart, 227 U.S. 184, 33 S.Ct. 250, 57 L.Ed. 473; Alabama Great Southern R. Co. v. Thompson, 200 U.S. 206–215, 26 S.Ct. 161, 50 L.Ed. 441, 4 Ann.Cas. 1147; Louisville & N. R. Co. v. Ide, 114 U.S. 52–56, 5 S.Ct. 735, 29 L.Ed. 63; Chesapeake & O. R. Co. v. Dixon, 179 U.S. 131, 21 S.Ct. 67, 45 L.Ed. 121; McAllister v. Chesapeake & O. R. Co., 243 U.S. 302, 37 S.Ct. 274, 61 L.Ed. 735; Beckwith v. Chicago, M. & St. P. R. Co., D.C., 223 F. 858; Morris v. Louisville & N. R. Co., C.C., 175 F. 491; Greif v. Sears, Roebuck & Co., D.C., 48 F.Supp. 242; Preston v. Kaw Pipe Line Co., 10 Cir., 128 F.2d 162.

■■ This is not the time, nor, unless and until jurisdiction is retained, is this the place for the consideration of infirmities in the pleading of the plaintiffs, or even whether it adequately states a cause of action under the state law, or under the federal rules a claim upon which relief may be granted, against the removing defendant. Broadway Ins. Co. v. Chicago G. W. R. Co., C.C.W.D.Mo., 101 F. 507. But it seems to the court to be unquestionable that such claim for relief, if any, as is alleged in the petition against the company is a cause of action upon the executors' bond set out as an exhibit with the petition, upon which the defendants, Bert M. Marsh and Fred H. Bruning, are the principal obligors and the company is the surety. Its terms patently create a joint and several liability of its obligors. Its obligation is couched in the following language: "Know all men by these presents: that Fred H. Bruning and Bert M. Marsh as principals and the United States Fidelity and Guaranty Company of Baltimore, Maryland, Surety are held and firmly bound unto Hon. B. V. Kohout, as County Judge, in and for Saline County, and to his successors in office and to all persons herein concerned in the penal sum of Three Hundred and Fifty Thousand ($350,000.00) Dollars, for the payment of which well and truly to be made, *we do jointly and severally bind ourselves and our lawful representatives.*" (Emphasis added.) And it is the general rule that upon such a bond, the principal obligor and the surety may be sued alone or jointly at the option of the plaintiff. 34 C.J.S. 1213, Title, Executors and Administrators, § 981 a(2), and cases there cited. It is not asserted, nor does the court consider that it could reasonably be maintained, that there is any contrary rule in Nebraska. Council Bluffs Sav. Bank v. Griswold, 50 Neb. 753, 70 N.

W. 376. In fact, the Supreme Court of Nebraska in an action involving liability on a guardian's bond lately held that "the liability of a surety on a guardian's bond, so far as the ward is concerned, is identical with that of his principal". Olsen v. Marsh, Neb., 8 N.W.2d 169, 173. Admittedly, the court was there dealing primarily with the measure of recovery and the technique of proof incident thereto but its discussion is not wholly irrelevant to the instant issue.

Recognizing, as the court must, that claimants in a suit upon the present executors' bond might assert a joint liability against Bert M. Marsh, Fred H. Bruning and the company, have the plaintiffs done so? The court is satisfied that the question must be answered affirmatively. Bert M. Marsh and Fred H. Bruning are parties to the suit along with the company and have been duly served with process. The petition sets out the making and approval of the bond, and maladministration by the principals thereunder, to the plaintiffs' damage, and it prays for relief jointly against Bert M. Marsh, Fred H. Bruning and the company, inter alios. True, it also asserts that the maladministration was in furtherance of a conspiratorial design to which Bruning and Bert M. Marsh along with three other individuals were parties, and the company was a stranger; and it seeks relief also against the three other alleged conspirators. But insofar as the alleged malfeasance of Bert M. Marsh and Bruning as principals under the bond is concerned, the conspiracy affords merely the motive for or the impulse to their delinquency. Their obligation and default under the bond as a contractual entity are alleged as a foundation for liability upon the bond against both them and the company. The court, therefore, considers that, whether adequately or not, the same claim for relief under the bond that is asserted against the company as surety, is alleged against Bruning and Bert M. Marsh as principals; and that in determining whether the plaintiffs have a right to remove the suit in consequence of a separable controversy, the entire cause of action upon the bond as against all defendants under it reached by the plaintiffs' petition and process must be explored.

It may be allowed without, however, so deciding that as between the three alleged conspirator defendants who were strangers to the bond, and the company a separable controversy is asserted in the petition against the company, but in that controversy it is inseparably joined as a defendant with its co-defendants, Bert M. Marsh and Bruning. And that is the controversy with which the court now has chiefly to deal.

Citing Fraser v. Jennison, 106 U.S. 191, 1 S.Ct. 171, 27 L.Ed. 131, the company, quoting from page 194 of the official report of that case, argues that the existence of a separable controversy against it ought to be affirmed because its liability under its bond is such that a separate and distinct suit against the company might properly have been brought and complete relief against it afforded to the plaintiffs without including any other defendant. The possibility of suit solely against the company may be granted for the purpose of this study, but the solicited conclusion does not follow. In Fraser v. Jennison removal was rejected in a partition action where some defendants resided in, and others out of, the state in whose courts the suit was originally brought, the court saying in part: "Where the contest is joint, and is not separable for any purpose, as the probate of a will, part of the parties on one side of it cannot remove the cause where it is not removable as to all." In Hyde v. Ruble, 104 U.S. 407, 26 L.Ed. 823, upon whose authority Fraser v. Jennison partially rests, a remanding order was sustained in an action instituted in a Minnesota state court upon an alleged contract of bailment against two partners, one of whom was a resident of Minnesota and the other of another state. Manifestly, so far as these cases in their essence, as distinguished from matter of preliminary discussion, are authority here, they sustain the position of the plaintiffs rather than that of the company.

More directly pertinent to the controversy between the plaintiffs and the obligors on the bond is Louisville & N. R. Co. v. Ide, 114 U.S. 52–56, 5 S.Ct. 735, 737, 29 L.Ed. 63, a suit upon contract, in which it is said: "The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings. Here it is certain joint contracts entered into by all the defendants for the transportation of property. On the one side of the controversy upon that cause of action is the plaintiff, and on the other all the defendants. The separate defenses of

the defendants relate only to their respective interests in the one controversy. The controversy is the case, and the case is not divisible. It is said, however, that by the New York Code of Civil Procedure, § 1204, 'judgment may be given for or against one or more plaintiffs, and for or against one or more defendants,' and under this it has been held that when several are sued upon a joint contract, and it appears that only a portion are bound, the plaintiff may recover against those who are actually liable. The same rule undoubtedly prevails in many other states, but this does not make a joint contract several, nor divide a joint suit into separate parts. It may expedite judicial proceedings and save costs, but it does not change the form of the controversy; that is to say, the case. The plaintiff can still sue to recover from all, though he may be able to succeed only as to a part." See also Western Union Tel. Co. v. Brown, C.C.E.D.Mo., 32 F. 337, Brewer J.; Mutual Reserve Fund Life Ass'n v. Farmer, 8 Cir., 77 F. 929; Columbia Digger Co. v. Rector, D.C.Wash., 215 F. 618; Centerville State Bank v. National Surety Co., 10 Cir., 37 F.2d 338; Moore v. Los Angeles Iron & Steel Co., C.C.Cal., 89 F. 73; Pullman Co. v. Jenkins, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334.

■ Of the foregoing cases several arose in suits upon bonds. Thus, in Mutual Reserve Fund Life Ass'n v. Farmer [77 F. 931], the circuit court of appeals for this circuit declared: "The proposition is equally untenable that an action brought against a principal and his surety on a bond, note, or other obligation involves a separable controversy, such as will entitle one of the defendants to remove the case to the federal court if he and the plaintiff happen to be citizens of different states. In such cases the cause of action is single and indivisible, even though there are numerous defendants, and even though each defendant interposes a different defense. * * * And this doctrine holds good whether the action sounds in contract or in tort. A suit cannot be removed on the ground of a separable controversy, unless the complaint discloses two or more causes of action, one of which is wholly between citizens of different states." See also Western Union Tel. Co. v. Brown, supra, Centerville State Bank v. National Surety Co., supra, and Columbia Digger Co. v. Rector, supra, and many other cases to like effect.

That a like rule applies in actions sounding in tort is beyond question. And a leading case to that effect is Pirie v. Tvedt, 115 U.S. 41, 5 S.Ct. 1034, 1161, 29 L.Ed. 331. Little v. Giles, 118 U.S. 596–600, 7 S.Ct. 32, 30 L.Ed. 269; Alabama Great Southern R. Co. v. Thompson, 200 U.S. 206, 215, 216, 26 S.Ct. 161, 50 L.Ed. 441, 4 Ann.Cas. 1147.

The company, in its controversy with the plaintiffs, being yoked with two residents of Nebraska, can not effectively and finally procure the removal of the suit to this court, because one of two or more defendants sued together on a joint, or joint and several, obligation can not alone demand removal.

■ In the absence of a separable controversy it is necessary to removal that all the defendants properly included by the plaintiff in the action join in the petition for removal and be lawfully entitled to remove. And by the same reasoning and upon the same principles, if there be a separable controversy all of the defendants properly involved in that controversy must petition for, and be qualified to seek, removal. Fletcher v. Hamlet, 116 U.S. 408, 6 S.Ct. 426, 29 L.Ed. 679; Wilson v. Oswego Tp., 151 U.S. 56, 14 S.Ct. 259, 38 L.Ed. 70; Pullman Co. v. Jenkins, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334; Thompson v. Chicago St. P. v. K. C. R. Co., C.C., 60 F. 773; Yarnell v. Felton, D.C., 104 F. 161; Miller v. Le Mars Nat. Bank, C.C., 116 F. 551; Gjerde v. Thelander, D.C., 294 F. 292; Consolidated Independent School Dist. v. Cross, D.C., 7 F.2d 491; McCaffrey v. Wilson & Co., D.C., 10 F.2d 368. And Bert M. Marsh and Fred H. Bruning, being residents of Nebraska, are barred from the right to remove. It is true that the sentence touching the right of removal in the case of separable controversies omits the phrase "being nonresidents of that state". But the prevailing construction, led by the thought of this circuit, holds that it is to be construed as equally applicable to that sentence. Thurber v. Miller, 8 Cir., 67 F. 371. That case is generally regarded as nullifying the significance of Stanbrough v. Cook, C.C.N.D.Iowa, 38 F. 369, 3 L.R.A. 400, which expresses a contrary view. Wichita Nat. Bank v. Smith, 8 Cir., 72 F. 568; Monroe v. Williamson, C.C.W.D.Ark., 81 F. 977–988; Drovers' Deposit Nat. Bank v. Tichenor, D.C., 202 F. 1013; Wrightsville Hardware Co. v. Hardware & Woodenware Mfg. Co., C.C. S.D.N.Y., 180 F. 586; Whitaker v. Coudon,

D.C.Md., 217 F. 139; Rand v. Hercules Powder Co., D.C.N.Y., 28 F.2d 131, 132.

In the case last cited the following language is instructive: "In the Albert E. Rand suit there are various petitioners for removal, two being residents of this state and one a nonresident; but the essential allegations of the bill and demand for relief are the same as in the first-entitled action, and I find that the asserted separable controversy is not wholly between citizens of different states. That one of the petitioners is a nonresident is immaterial, in view of the decisions construing section 28, second sentence (28 U.S.C.A. § 71, sentence 2), which quite generally hold, as heretofore indicated, that an action against resident and nonresident defendants does not confer the right of removal; *such right being limited to instances where all the defendants are nonresident.* See also, Whitaker v. Coudon, D.C., 217 F. 139, and cases cited. *Such interpretation also applies to and is impliedly included in* the third sentence." (Emphasis added.) See also Pullman Co. v. Jenkins, supra.

And if it be thought that the fact that all of the plaintiffs and the defendants having common interests with them are residents of states other than Nebraska and Maryland, the company a resident of Maryland and Bert M. Marsh and Fred H. Bruning residents of Nebraska, sustains the right to removal on the motion of the company, then it may be remembered that precisely comparable residential situations existed in Thurber v. Miller, supra; Monroe v. Williamson, supra; Wrightsville Hardware Co. v. Hardware & Woodenware Mfg. Co., supra; Rand v. Hercules Powder Co., supra; and Whitaker v. Coudon, supra. The first paragraph of the syllabus in the Whitaker case will reveal its pertinence: "1. Where a suit, by citizens of New York, South Carolina, Delaware, and West Virginia, was instituted in the state courts of Maryland against residents of Maryland, West Virginia, and Washington, there being residents of Maryland among the defendants, who had no right of removal on the ground of diverse citizenship, the suit was not removable." The residence in states other than Nebraska and Maryland of the plaintiffs and the defendants of like status will not sustain the company in its demand for removal in the face of the residence in Nebraska of Bert M. Marsh and Fred H. Bruning, and of the prevailing construction of the sentence in the statute touching separable controversies.

In its carefully prepared briefs and arguments the company has presented for the court's consideration several authorities in support of its claim of the separability of the cause of action against it. These have been examined with due interest and care by the court; and, upon the premise that, to the plaintiffs' alleged cause of action upon the executors' bond, the executors, residents of Nebraska, as well as the company, are parties defendant, have been found inapplicable to the issue here. To this statement an exception may possibly though not certainly, lie in the case of Town of Wilson v. Fidelity & Deposit Co., 205 N.C. 262, 171 S.E. 68, the precise factual and contractual situation in which, however, does not appear in the reported opinion. Fraser v. Jennison, 106 U.S. 191, 1 S.Ct. 171, 27 L.Ed. 131, has already been mentioned and considered. In Preston v. Kaw Pipe Line Co., 10 Cir., 128 F.2d 162, a cause of action was stated against sundry parties defendant for specific performance of an escrow agreement respecting certain oil and gas leases, and a manifestly distinct cause of action against a pipe line company for an accounting for oil delivered to and received by it. Manifestly the pipe line company alone was concerned in the latter controversy and separability was affirmed. Pullman Co. v. Jenkins, 305 U.S. 534–540, 59 S.Ct. 347, 350, 83 L.Ed. 334, recognized the separability of a controversy as between the plaintiff on the one hand and the guilty parties to one of two distinct but concurring torts. However, in that case, pertinently to the present controversy the following significant language appears in the opinion: *"It was incumbent upon the Pullman Company to show that it had a separable controversy which was wholly between citizens of different States. As in determining whether there was such a separable controversy with respect to the Pullman Company its porter could not be ignored, the Company was bound to show that he was a non-resident in order to justify removal."* (Emphasis added.)

Des Moines Elevator & Grain Co. v. Underwriters' Grain Ass'n, 8 Cir., 63 F.2d 103, involved a suit, allowable under the laws of Iowa, against one-hundred twelve insurance companies, each of which had issued an open policy of insurance to resident attorneys in fact in Iowa who in turn had issued certificates of coverage in favor of the insured, preserving consistently the relation of each insurer as a several and separate insurer. Upon motion to remand after removal it was rightly held that, each

insurer being severally and alone liable for its coverage, the nonresident companies or any of them, having obviously separable controversies, might remove the entire suit upon the ground of a separable controversy. To precisely the same effect is Stewart v. Nebraska Tire & Rubber Co., 8 Cir., 39 F.2d 309, certiorari denied 282 U.S. 840, 51 S.Ct. 21, 75 L.Ed. 746, in which it was held that a statute of Iowa and Section 20-320, C.S.Neb.1929 (then Sec. 8544, C.S. 1922), allowing the joinder in a single action as defendants of persons severally liable upon the same obligation or instrument (there an endorsed promissory note) were not operative to convert their several liabilities into a joint liability and thereby defeat separability. Hamilton v. Empire Gas & Fuel Co., 8 Cir., 297 F. 422, held that distinct causes of action and separable controversies were involved in a suit against (a) a sole corporate lessee under an oil and gas lease for the violation of its obligation to drill a protective well, and (b) it and its officers for acts in furtherance of a conspiracy to injure the plaintiff by abuse in the operation of existing wells. In Iowa Lillooet Gold Mining Co. v. Bliss, C.C.Iowa, 144 F. 446, an action was held to involve a separable controversy between the plaintiff and a bonding company, where the suit was against an employee for unlawful conversion of the plaintiff's funds and against the bonding company as guarantor of his fidelity. However, recognizing the point upon which this memorandum chiefly rests, the court there distinguished the case before it by emphasizing the fact that though the embezzling employee had signed the bond he had thereby conferred no right or cause of action upon the plaintiff, but had merely agreed to indemnify the bonding company. Likewise Branchville Motor Co. v. American Surety Co., D.C.S.C., 27 F.2d 631, was a suit claiming against an employee, for embezzlement by him and the company's treasurer and managing officer, and against a nonresident corporate surety upon the treasurer's bond which was not signed by or made to cover the employee defendant. And the court, while allowing removal on the petition of the surety upon the premise of a separable controversy, emphasized the fact that if the plaintiff had sued the defaulting treasurer along with his surety and the treasurer had been a resident of the state in whose court the suit was filed, there would have been a joint and nonseparable action, defeating removal. Hoffman v. Lynch, D.C.Ga., 23 F.2d 518 involved manifestly distinct claims (a) against a corporation for an accounting and (b) against its officers and directors individually for fraud in the diversion of the corporate assets. In Hilton v. Southern R. Co., D.C.S.C., 21 F.Supp. 17, 18, it was held that the National Surety Company, a defendant sued on a contractor's public liability bond, was a defendant in a separable controversy in a suit, permissible by state statute, against a railroad corporation, its engineer and the contractor (construction company) for concurring negligence causing the death of plaintiff's intestate, and against the surety company only on its bond. It was asserted that "the complaint does not allege facts showing a joint liability of the National Surety Company with any of the other defendants". And, finally, McVay v. Mutual Ben. Health & Accident Ass'n, D.C.Okl., 23 F.Supp. 642, involved a suit by an employee against (a) the insurance company upon a policy which allegedly would have been in force if his employer had not failed to pay to the insurance company premiums which the plaintiff had advanced to it for that purpose and (b) the employer corporation for its wrong in failing to make such payment, two manifestly distinct claims.

The court is persuaded that there is no element in any or all of those cases that maintains the thesis of separability in respect of a controversy between beneficiaries under an executors' bond expressly creating a joint and several liability on the one hand, and the principal obligors and surety on the bond on the other hand, for alleged default under the bond, even though the default be referred in the petition to conspiracy between the principal obligors and still other persons who are also included as defendants and against whom liability is predicated in part at least upon the overt acts of the principal obligors in violating the bond, as a part of the operation of the fraudulent and conspiratorial scheme. And that, so far as the company is concerned, is the nature of the controversy now under consideration. Indeed the logic of the cases cited by the company points to the denial in such circumstances of the right to remove.

Consequently, an order is being filed with this memorandum sustaining the application or motion to remand and remanding the suit to the District Court of Saline County, Nebraska.